**No. 25-11458-D**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

SCOTT ALEXANDER JOHNSTONE,

Plaintiff-Appellant,

v.

DISCOVER BANK FINANCIAL SERVICES
D/B/A DFS SERVICES LLC,

Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

No. 23-14340-CIV-MAYNARD

---

# APPELLANT'S OPENING BRIEF

---

Jerome A. Stone, Jr.
Florida Bar No. 57010
STONE & CAPOBIANCO, P.L.
219 SE Ocean Boulevard
Stuart, FL 34994
Telephone: (772) 781-4357
Facsimile: (772) 781-4340
Primary Email: jas@stonelawfl.com
Secondary Email: lec@stonelawfl.com
Tertiary Email: crim@stonelawfl.com
*Attorneys for Appellant Scott Alexander Johnstone*

**No. 25-11458-D**
**Scott Alexander Johnstone v. Discover Bank Financial Services d/b/a DFS Services, LLC**

**Certificate of Interested Persons and Corporate Disclosure Statement**

Agnello, Nicholas

Burr & Forman LLP

Capital One Financial Corporation (COF), a publicly traded company

Capobianco, Linda

Discover Financial Services (DFS)

Elliott, David

Johnstone, Scott

Mills-Maynard, Shaniek, U.S. Magistrate Judge

Solano, Sara

Stone, Jerome

Stone & Capobianco, P.L.

## Statement Regarding Oral Argument

Appellant believes that oral argument would assist the Court's decisional process in this case.

**Table of Contents**

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement…………..C-1

Statement Regarding Oral Argument……………………………………………..i

Table of Contents……………………………………………………………...ii

Table of Citations……………………………………………………………..iv

Jurisdictional Statement………………………………………………………....v

Statement of the Issues………………………………………………………...1

Statement of the Case……………………………………………………….....2

Summary of the Argument…………………………………………………...10

Argument……………………………………………………………………12

I. The District Court Erred by Granting Summary Judgment to Discover……………………………………………………………..12

A. A Genuine Dispute Exists as to Whether Mr. Johnstone Sent Timely Written Notice…………………………………..12

B. Discover's Denial of Receipt and Discrepancies in Dates Are Classic Jury Questions………………………………...19

C. Mr. Johnstone's Testimony Must Be Credited at Summary Judgment……………………………………………………...20

II. The Trial Court Erred in Concluding There Was No Breach of Contract Established..……………………………………………..20

A. Discover Breached the Agreement by Failing to Act Upon Timely Notification……………………………………20

B. Discover Also Breached by Failing to Honor Mr. Johnstone's Closure Request....................................23

Conclusion.....................................................................24

Certificate of Compliance.....................................................25

Certificate of Service.........................................................25

**Table of Citations**

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 255 (1986)……………………………………………9,10,11,20

*Brucker v. City of Doraville,*
38 F.4th 876, 881 (11th Cir. 2022)…………………………………………9

*Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.,*
172 F.3d 781, 784 (11th Cir. 1999)..………………………………………20

*Feliciano v. City of Miami Beach,*
707 F.3d 1244, 1252 (11th Cir. 2013)……………………………………...20

*Hardigree v. Lofton,*
992 F.3d 1216, 1229 (11th Cir. 2021)…………………… ………………...10

*Huggins v. Lueder, Larkin & Hunter, LLC,*
39 F.4th 1342, 1345 (11th Cir. 2022)……………………………………….9

*Morrison v. Amway Corp.,*
323 F.3d 920, 924 (11th Cir. 2003)………………………………………... 10

*ParkerVision, Inc. v. Qualcomm Inc.,*
116 F.4th 1345, 1354 (Fed. Cir. 2024)…………………………………….. 9

*Patterson v. Georgia Pac., LLC,*
38 F.4th 1336, 1350 (11th Cir. 2022)……………………………………….9

*Rollins, Inc. v. Butland*,
951 So.2d 860, 876 (Fla. 2d DCA 2006)…………………………………...20

*Sears v. Roberts,*
922 F.3d 1199, 1205–06 (11th Cir. 2019)………………………………… 16

*Tolan v. Cotton,*
572 U.S. 650, 651 (2014)………………………………………………9,11,20

## Jurisdictional Statement

The district court had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The final judgment disposing of all claims was entered by the United States District Court for the Southern District of Florida on March 28, 2025. Plaintiff-Appellant filed a timely notice of appeal on April 28, 2025, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A).

## Statement of the Issue(s)

I. The District Court Erred by Granting Summary Judgment to Discover

A. A Genuine Dispute Exists as to Whether Mr. Johnstone Sent Timely Written Notice

B. Discover's Denial of Receipt and Discrepancies in Dates Are Classic Jury Questions

C. Mr. Johnstone's Testimony Must Be Credited at Summary Judgment

II. The Trial Court Erred in Concluding There Was No Breach of Contract Established

A. Discover Breached the Agreement by Failing to Act Upon Timely Notification

B. Discover Also Breached by Failing to Honor Mr. Johnstone's Closure Request

**Statement of the Case**
Including Prior Proceedings and Dispositions

This appeal arises from a final summary judgment entered in favor of Defendant-Appellee Discover Bank Financial Services d/b/a Discover Financial Services LLC ("Discover") in the Southern District of Florida. Doc 56. Plaintiff-Appellant Scott Alexander Johnstone "Johnstone" brought claims against Discover seeking recovery for substantial unauthorized withdrawals from his personal Discover bank accounts while he was incarcerated. Doc 1-1 - Pg 5. Mr. Johnstone alleged that third parties accessed his financial information and fraudulently depleted his accounts without his knowledge or consent. *Id.*

Mr. Johnstone asserted causes of action for breach of contract, civil theft, breach of fiduciary duty, fraud, and constructive fraud. *Id.* Central to his claims was the allegation that he timely notified Discover of the fraudulent activity via written correspondence, and that Discover failed to take appropriate steps to secure his accounts or reimburse him in accordance with the applicable deposit account agreements. *Id.*, Doc 37-1 – Pg 233. Discover denied receiving timely notice and argued that Mr. Johnstone waived all claims by failing to report the transactions within the contractual deadlines set forth in those agreements. Doc 5, Doc 37 – Pg 3.

Following discovery, Discover moved for summary judgment, arguing that Mr. Johnstone's claims were contractually and legally barred. Doc 37. The district

court granted summary judgment in Discover's favor on all counts, holding that the evidence, including part of Mr. Johnstone's deposition testimony, showed that he failed to timely notify Discover of the unauthorized transactions. Doc 56, Doc 57. The court concluded that, under the terms of the deposit account agreements, Mr. Johnstone's claims were waived, and no triable issues of fact existed. *Id.* The court also concluded that Mr. Johnstone failed to establish the element of an actual breach pertaining to the claim for breach of contract. Final judgment was entered on March 28, 2025. *Id.* Mr. Johnstone timely appealed. Doc 58.

**Statement of facts**

In June 2015, using online applications, Plaintiff opened two accounts at Discover: a cashback debit account with an account number ending in 7563 ("7563 Account") and an online savings account with an account number ending in 8520 ("8520 Account"). Doc 38 - ¶¶ 1-2; Doc 45 ¶¶ 1-2; Doc 37-1 - ¶¶ 4-5. On October 19, 2015, using an online application, Plaintiff opened another cashback debit account at Discover with an account number ending in 9968 ("9968 Account"). Doc 38 - ¶ 3; Doc 45 - ¶ 3; Doc 37-1 - ¶ 6. On October 24, 2017, using an online application, Plaintiff opened an online savings account at Discover with an account number ending in 7970 ("7970 Account"). Doc 38 - ¶ 4; Doc 45 - ¶ 4; Doc 37-1 - ¶ 7.1 Collectively, these four accounts are referred to as the "Accounts."

When opening the Accounts, Plaintiff agreed to the terms of a Deposit Account Agreement as part of the online application process. As evidenced by subsequent bank account statements, after being notified of the electronically available 2018 Deposit Agreement, Plaintiff continued to use his Accounts and became bound by the 2018 Deposit Agreement. Doc 38 - ¶ 9; Doc 45 - ¶ 9; Doc 37-1 - ¶ 12, Ex. A-2.

The Deposit Account Agreement contains several key provisions. By opening an account, a Discover customer like Plaintiff agrees to the following:

> This Agreement, together with any amendments or addendums to these terms and conditions or other agreements with respect to specific products or services that we provide you concerning your Accounts and related products and services, governs your Accounts with Discover Bank. Please read and keep this Agreement for your records. … You accept this Agreement by signing a Signature Card or opening or using an Account.

Doc 37-1 - Ex. A-1, A-3, A-5 (Deposit Account Agreement at 2). Regarding bank statements for savings accounts, the Deposit Account Agreement provides:

> We will make available quarterly statements unless there is an EFT transaction(s) within the month, in which case we will make available a monthly statement.

*Id.* (Deposit Account Agreement at 32). In the same section, the Deposit Account Agreement continues, advising the customer regarding the procedure for correcting statement errors:

> **Statement Error Resolution**
>
> You must review and call us or write us promptly after we mail or otherwise make a statement available if:
>
> - An item (other than an EFT [Electronic Fund Transfer]) that you did not authorize or that contains an unauthorized alteration is listed on the statement,
> - Your statement contains any errors (other than EFT related errors), or
> - You did not receive your scheduled statement.
>
> If you do not notify us of unauthorized or altered items, or other errors (other than EFTs), or of a missing statement within 60 days after a statement is mailed or otherwise made available, then you waive all claims you may have against us regarding these items.
>
> If you do not call or write us regarding an item that you did not authorize or that contains an unauthorized alteration within 30 days after a statement is mailed or otherwise made available, we are not liable to you for subsequent unauthorized transactions on your Account that we could have prevented if you had timely told us of the unauthorized alteration.
>
> You must call us or write us within six (6) months after a statement is mailed or made available to you to report an unauthorized or missing endorsement on an item you issued.
>
> You must provide us with all information we need to investigate the alleged error or item and file any police reports and provide supporting affidavits and testimony we reasonably request. If you do not comply with the requirements, we are not required to reimburse you for any claimed loss and you cannot bring any legal claim against us in any way related to the item or errors.

*Id.* Similarly, the Deposit Account Agreement contains notification requirements regarding unauthorized electronic fund transfers:

> Tell us AT ONCE if you believe your Debit Card or PIN has been lost or stolen, or if you believe that an electronic fund transfer has been

> made without your permission using information from your check, by calling us at 1-800-347-7000 or by writing us at Discover Bank, PO Box 30411, Salt Lake City, UT 84130-0411. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Account. If you tell us within two (2) Business Days after you learn of the loss or theft of your Debit Card or PIN, you can lose no more than $50 if someone used your Debit Card or PIN without your permission. If you do NOT tell us within two (2) Business Days after you learn of the loss or theft of your Debit Card or PIN, and we can prove we could have stopped someone from using your Debit Card or PIN without your permission if you had told us, you could lose as much as $500. Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us AT ONCE. If you do not tell us within 60 days after the statement was made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

*Id.* (Deposit Account Agreement at 38).

Finally, the Deposit Account Agreement contains a closure provision that states the following:

> **(b) Closure by You**
> You can close your Account at any time by notifying us in person, in writing or calling us. For phone requests, we may require you to submit an Account closure request in writing.

*Id.* (Deposit Account Agreement at 35).

Discover's business records show, and Plaintiff's deposition testimony confirms, that Plaintiff received online paperless account statements prior to the events described in his Complaint. Doc 38 - ¶ 13; Doc 45 - ¶ 13; Doc 37-1 ¶ 16; Doc 37-2 – Pg 163.

Plaintiff alleged in his complaint that he "promptly filed a report on July 10, 2019, with the Okeechobee County Sheriff and notified Discover of the suspicious account activity leading to the loss or theft by electronic funds transfers made by card, code, or other means without his permission." Doc 1-1 - Pg 6.

Attached to the Complaint is an incident report by the Okeechobee County Sheriff's Office, dated July 10, 2019. Doc 1-1 - Pg 15-22. According to this report, a deputy sheriff responded to Okeechobee County Jail on July 10, 2019, following Plaintiff's report of a suspicious incident. *Id.* at 20. The deputy met with Plaintiff who stated that he found a piece of paper with his credit card numbers on it several days ago, which Plaintiff flushed down the toilet. *Id.* Plaintiff indicated that he nonetheless suspected unauthorized activity on his credit cards potentially involving his cellmate and he "just wants to cancel his credit cards and a report to be generated." *Id.*

Plaintiff was asked in his deposition "[h]ow did you report the fraud directly to Discover Bank on July 10th, 2019?" and Plaintiff responded " I … wrote a letter to Discover Bank …. I wrote a letter to them …. I said, you know, my account is being—my account is being attacked, or whatever the wording I used, and please lock down my account. Please do not let anybody else withdraw money. I am currently incarcerated." Doc 37-2, Pg 102, 137.

In his sworn interrogatory responses, Plaintiff similarly claims to have "reported the fraud or identity theft directly to Discover Bank on July 10, 2019." Doc 37-4 at ¶ 6.

According to Ms. Connolly's declaration statement: "Plaintiff had no communication whatsoever with Discover in *June* of 2019, and had not even advised Discover of his incarceration." Doc 38 - ¶ 27; Doc 45 - ¶ 27; Doc 37-1 - ¶ 20. (emphasis added).

On July 10, 2023, Plaintiff commenced this case in state court. On October 31, 2023, Defendant removed the case to this federal court on grounds of diversity jurisdiction. In his Complaint, Plaintiff alleges that after he notified "Discover about the missing funds, suspicious activity and fraudulent transactions, Discover[] has refused to communicate with Plaintiff and instead denied him access to his accounts and flagged [his] accounts for fraudulent activity." Doc 1-1 - Pg 6 ¶ 9. "As a result of Discover's failure to protect [Plaintiff's] financial assets and refusing to provide information and access to the accounts," Plaintiff "has lost all financial funds" belonging to him. *Id.* ¶ 10. Plaintiff contends that Discover is liable to him for over $400,000 in alleged damages under the following legal theories: (1) breach of contract, (2) civil theft, (3) intentional breach of fiduciary duty, (4) fraud, and (5) constructive fraud. *Id.* ¶¶ 11-44. In its Answer, Defendant denies Plaintiff's claims and asserts sixteen affirmative defenses. Doc 5.

**(i) A statement of the standard of review for each contention.**

This Court reviews summary judgment grants under regional circuit law, here the Eleventh Circuit. *See ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1354 (Fed. Cir. 2024). "The Eleventh Circuit reviews a grant of summary judgment *de novo*, 'construing the facts and drawing all reasonable inferences in favor of the nonmoving party'" (*id.* (citing *Brucker v. City of Doraville*, 38 F.4th 876, 881 (11th Cir. 2022)), "and affirm[ing] only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" (*Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1345 (11th Cir. 2022) (citation omitted)).

In summary judgment appeals, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[W]hen determining whether there is a genuine issue of material fact that defeats summary judgment, [appellate courts] do not weigh conflicting evidence or make credibility determinations to resolve factual disputes." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1350 (11th Cir. 2022) (citation omitted). Those "are jury functions, not those of a judge … ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. "Instead, the [appellate] court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could

find for the non-moving party." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (citing *Anderson*, 477 U.S. at 249).

To survive summary judgment, the non-moving party "need only present evidence from which a jury might return a verdict in [its] favor." *Anderson*, 477 U.S. at 257. Summary judgment is appropriate only if "the evidence ... is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. However, "if a genuine dispute is found, summary judgment must be denied," because the parties' "factual disputes can only be sorted out by a jury." *Hardigree v. Lofton*, 992 F.3d 1216, 1229 (11th Cir. 2021) (citation omitted).

**Summary of the Argument**

There is conflicting evidence in the record regarding (1) whether Mr. Johnstone sent a letter to Discover, (2) when Mr. Johnstone sent the letter to Discover notifying them of fraudulent activity, (3) whether the letter requested Discover to close his accounts, (4) the date when fraudulent activity first began, (5) whether Discover was properly notified within the required time frame outlined in the deposit account agreement, and (6) whether Discover breached the deposit account agreement by refusing to immediately close Mr. Johnstone's accounts.

A reasonable jury could infer that (1) a letter was sent by Mr. Johnstone to Discover, (2) the letter was sent on July 10, 2019, notifying Discover of fraudulent activity, (3) the letter requested Discover to close his accounts, (4) the fraudulent

activity began around July of 2019, (5) Mr. Johnstone sent a letter notifying Discover within the required time frame outlined in the deposit account agreement, and (6) Discover breached the deposit account agreement by refusing to immediately close Mr. Johnstone's accounts.

Accordingly, the trial court erred by granting summary judgment in favor of Discover.

Summary judgment is not appropriate where testimony is contradicted but not discredited. Mr. Johnstone testified that on July 10, 2019, while incarcerated, he "wrote a letter to Discover Bank" stating that his account was being attacked, and that he instructed Discover to "please lock down my account" and "please do not let anybody else withdraw money." (Doc. 37-2 – Pg 103). His testimony is consistent with his verified interrogatory responses (Doc. 37-4 – ¶ 6), Discover bank statements (Doc 37-1 – Pg 35-231), and a contemporaneous police report (Doc. 1-1 - Pg 20).

Rather than credit Mr. Johnstone's testimony, the district court improperly weighed it against Discover's corporate affidavit and rejected it based on credibility, contrary to binding Supreme Court and Eleventh Circuit precedent. *See Tolan v. Cotton*, 572 U.S. 650, 657–58 (2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

# ARGUMENT

## I. The District Court Erred in Granting Summary Judgment to Discover

### *A. A Genuine Dispute Exists as to Whether Mr. Johnstone Sent Timely Written Notice*

The gravamen of Discover's motion and the district court's ruling is that Mr. Johnstone failed to notify Discover of unauthorized transactions within the contractual deadline. The court found that "[a]ny notice provided by [Mr. Johnstone] on July 10, 2019 was untimely under the terms of the deposit account agreement. Thus, plaintiff's breach of contract claim is precluded as a matter of law based on Plaintiff's failure to timely notify Discover of suspected unauthorized activity." Doc 56 – Pg 22.

The account transaction logs submitted by Discover show that Mr. Johnstone's accounts maintained steady account balances from month to month leading up to July 2019.

**Account 8520**

For example, Account 8520 showed a steady increase from $232,544.91 on January 1, 2018 (DE 37-1, P. 208), to $252,646.67 at the end of June 2019 (Doc 37-1 - Pg 211). However, Account 8520 reflects a sudden total depletion of $190,378.68 between **July 17, 2019**, and September 30, 2019. Doc 37-1 - Pg 219. The large withdrawals continued from month to month until Account 8520 was depleted down

to $44.05 on November 6, 2019. Doc 37-1 - Pg 215. Within four months the account was effectively depleted.

**Account 7970**

Account 7970 showed a steady increase from $51,813.80 on January 1, 2018 (Doc 37-1 - Pg 127), to $72,630.29 at the end of June 2019 (Doc 37-1 - Pg 135). However, Account 7970 reflects a sudden total depletion of $19,648.62 between **July 31, 2019**, and September 27, 2019. Doc 37-1 - Pg 134. The large withdrawals continued from month to month until Account 7970 was depleted down to $5.13 on November 6, 2019. Doc 37-1 - Pg 131. Within four months the account was effectively depleted.

**Account 7563**

Account 7563 showed consistent activity between January 1, 2018 (Doc 37-1 - Pg 53), and June 30, 2019 (Doc 37-1 - Pg 73). However, Account 7563 reflects a sudden total deposit of $6,129.90 transferred from Account 8520 between **July 17, 2019**, and July 30, 2019, and a sudden total withdrawal of $8,375.46 between **July 9, 2019**, and July 29, 2019. Doc 37-1 - Pg 68. Account 7563 was effectively depleted down to $0.01 within one month.

**Account 9968**

Account 9968 showed consistent activity between January 1, 2018 (Doc 37-1 - Pg 155) and August 31, 2019 (Doc 37-1 - Pg 162). From November 1, 2018 (Doc

37-1 - Pg 153) to August 31, 2019 (Doc 37-1 - Pg 162), the account balance remained at $136.91 with zero transactions occurring. However, Account 9968 reflects a sudden deposit of $10,000.00 transferred from account 8520 on **September 21, 2019**, followed by a sudden withdrawal of $10,000.00 transferred to Account 7563 the same day. Doc 37-1 - Pg 160. By November 6, 2019, Account 9968 was effectively depleted down to $0.91. Doc 37-1 - Pg 169.

These suspicious transactions clearly began in the month of **July 2019** and continued until all accounts were effectively depleted, totaling well over $300,000 in losses for Mr. Johnstone. *Id.* Therefore, Plaintiff contends that the earliest date that can be used as the starting point for calculating timely notification per the deposit account agreement is the date that the July 2019 account statement was made available to Mr. Johnstone. Considering Mr. Johnstone sent a letter to Discover on July 10, 2019, with notification of the fraudulent activity and requesting his accounts be closed, his notification was timely in accordance with the deposit account agreement.

> **Statement Error Resolution**
>
> You must review and call us or write us promptly after we mail or otherwise make a statement available if:
>
> • An item (other than an EFT [Electronic Fund Transfer]) that you did not authorize or that contains an unauthorized alteration is listed on the statement,
> • Your statement contains any errors (other than EFT related errors), or
> • You did not receive your scheduled statement.

> If you do not notify us of unauthorized or altered items, or other errors (other than EFTs), or of a missing statement ***within 60 days*** after a statement is mailed or otherwise made available, then you waive all claims you may have against us regarding these items.
>
> If you do not call or write us regarding an item that you did not authorize or that contains an unauthorized alteration ***within 30 days after a statement is mailed or otherwise made available***, we are not liable to you for subsequent unauthorized transactions on your Account that we could have prevented if you had timely told us of the unauthorized alteration.

Doc 37-1 – Pg 249 . Similarly, the Deposit Account Agreement contains notification requirements regarding unauthorized electronic fund transfers:

> Tell us AT ONCE if you believe your Debit Card or PIN has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check, by calling us at 1-800-347-7000 or by writing us at Discover Bank, PO Box 30411, Salt Lake City, UT 84130-0411. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Account. If you tell us within two (2) Business Days after you learn of the loss or theft of your Debit Card or PIN, you can lose no more than $50 if someone used your Debit Card or PIN without your permission. If you do NOT tell us within two (2) Business Days after you learn of the loss or theft of your Debit Card or PIN, and we can prove we could have stopped someone from using your Debit Card or PIN without your permission if you had told us, you could lose as much as $500. Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us AT ONCE. If you do not tell us ***within 60 days after the statement was made available to you***, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

*Id* at Pg 252.

Mr. Johnstone testified under oath that on July 10, 2019, he sent written notice:

> "I wrote a letter to Discover Bank … I said, you know, my account is being—my account is being attacked, or whatever the wording I used, and please lock down my account. Please do not let anybody else withdraw money. I am currently incarcerated." (Doc. 37-2 - Pg 137)

This testimony was repeated earlier in his deposition:

> "How did you report the fraud directly to Discover Bank on July 10th, 2019?" "I … wrote a letter to Discover Bank." (Doc. 37-2 - Pg 102)

His sworn interrogatory responses were consistent:

> "Plaintiff reported the fraud or identity theft directly to Discover Bank on July 10, 2019." (Doc. 37-4 - Pg 6)

Discover argues this letter does not exist and maintains that it never received any letter from Mr. Johnstone. Doc 38 ¶ 27. But that argument merely creates a factual dispute—not grounds for summary judgment. *See Sears v. Roberts*, 922 F.3d 1199, 1205–06 (11th Cir. 2019).

Another factual dispute arises with the trial court's conclusion that Plaintiff's Complaint listed 2018 as the year large amounts of money appeared to go missing. This is an understandable, but inaccurate, interpretation of the allegation. The Complaint states that "[d]uring Johnstone's incarceration with the Florida Department of Corrections in 2018, large amounts of money appeared to go missing from Johnstone's Discover accounts." Doc 1-1 – Pg 6, ¶ 7. Indeed, Mr. Johnstone's incarceration began in 2018 and continued through 2021, and during said

incarceration period money did appear to go missing from his discover accounts. While the complaint could have been clearer, it does not explicitly allege that the money went missing in 2018, just that Mr. Johnstone's incarceration began in 2018.

Q. "… before this stint of incarceration, when was your last period of incarceration prior to that."

A. "2018, I believe, if you're going to ask the date, I believe it's October 12th. I'm not 100 percent on that, but I'm pretty sure it was October 12, 2018."

Q. "And is that the day you were released? Is that the end or the beginning."

A. "That would be the beginning."

Q. "And then when were you released?"

A. "I believe it was August 29th or 30th, 31st, there, of 2021."

Doc. 37-2 - Pg 13-14, Lines 16 – 2.

The ambiguity of Paragraph 7 is cleared up by the next paragraph in the Complaint, which states that "[w]hen Johnstone learned of the suspicious activity, he *promptly* filed a report on July 10, 2019, with the Okeechobee County Sheriff and notified Discover of the suspicious account activity leading to the loss or theft by electronic funds transfers made by card, code, or other means without his permission." Doc 1-1 – Pg 6, ¶ 7 (emphasis added).

Attached to the Complaint is an incident report by the Okeechobee County Sheriff's Office, dated July 10, 2019. Doc 1-1 - Pg 15-22. According to this report,

a deputy sheriff responded to Okeechobee County Jail on July 10, 2019, following Plaintiff's report of a suspicious incident. *Id.* at 20. The deputy met with Plaintiff who stated that he found a piece of paper with his credit card numbers on it *several days ago*, which Plaintiff flushed down the toilet. *Id.* Plaintiff indicated that he nonetheless suspected unauthorized activity on his credit cards potentially involving his cellmate and he "just wants to cancel his credit cards and a report to be generated." *Id.* (emphasis added).

Plaintiff was asked in his deposition "[h]ow did you report the fraud directly to Discover Bank on July 10th, 2019?" and Plaintiff responded " I … wrote a letter to Discover Bank …. I wrote a letter to them …. I said, you know, my account is being—my account is being attacked, or whatever the wording I used, and please lock down my account. Please do not let anybody else withdraw money. I am currently incarcerated." Doc 37-2 - Pg 102, 137.

In his sworn interrogatory responses, Plaintiff similarly claims to have "reported the fraud or identity theft directly to Discover Bank on July 10, 2019." Doc 37-4 at 6.

Mr. Johnstone's testimony is consistent with his verified interrogatory responses (Doc 37-4 at 6), Discover bank statements (Doc 37-1 – Pg 35-231), and a contemporaneous police report (Doc 1-1 at 20). If the Court weighs the evidence in favor of the nonmoving party here, then it will conclude that the unauthorized

transactions began in July 2019 and Plaintiff notified Discover on July 10, 2019, within the timeframe required by the deposit account agreement.

### *B. Discover's Denial of Receipt and Discrepancies in Dates Are Classic Jury Questions*

Discover's denial of receipt through its declarant, Ms. Connolly, is not dispositive. Ms. Connolly asserts:

> "Plaintiff had no communication whatsoever with Discover in June of 2019 and had not even advised Discover of his incarceration." (Doc 38 ¶ 27)

But Mr. Johnstone never claimed he sent the letter in June—he consistently testified it was sent on July 10, 2019. Doc 37-2 - Pg 102, 137. The district court erroneously relied on this June-July discrepancy to find no dispute. Doc 56 – Pg 21.

Furthermore, Discover's policies do not require confirmation of receipt before imposing liability. Instead, they permit written notification. "You must review and call us *or write us* promptly after we mail or otherwise make a statement available…" Doc 37-1 – Pg 249. (emphasis added)."Tell us AT ONCE if you believe your Debit Card or PIN has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check, by calling us at 1-800-347-7000 *or by writing us* at Discover Bank, PO Box 30411, Salt Lake City, UT 84130- 0411. Doc 37-1, Pg 252. (emphasis added). Whether Discover received or ignored that letter is for the jury to decide.

### *C. Mr. Johnstone's Testimony Must Be Credited at Summary Judgment*

The district court improperly discounted Mr. Johnstone's testimony due to inconsistencies about whether and when he sent the letter. Doc 56 - Pg 20. But inconsistencies go to weight, not admissibility or sufficiency. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). In *Tolan v. Cotton*, the Supreme Court reversed summary judgment because the court improperly disregarded the non-movant's version of events. 572 U.S. at 657–58. The same happened here. It is not the role of the trial court to determine credibility. *See Anderson*, 477 U.S. at 255. 1.

## II. The Trial Court Erred in Concluding There Was No Breach of Contract Established

### *A. Discover Breached the Agreement by Failing to Act Upon Timely Notification*

Under Florida law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages proximately caused by the breach. *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006); *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 784 (11th Cir. 1999).

Plaintiff's Complaint alleges Breach of Contract in Count I. Doc 1-1 – Pg 6. "When Johnstone opened his accounts with Discover he agreed to the standard agreements between banking institutions and their customers…" *Id.* at ¶ 12. "All the

above agreements between Johnstone and Discover were breached due to the actions or inactions of the Defendant…" *Id.* – Pg 7 at ¶ 13. "As a direct and proximate result of the breach of contract by Defendant, Plaintiff was damaged in that he lost the value of his life savings exceeding Four Hundred Thousand and 00/100 Dollars ($400,000.00)…" *Id.* at ¶15.

There is no dispute that Plaintiff opened four (4) deposit accounts with Discover between June 2015 and October 2017. Doc 38 - ¶¶ 1-4; Doc 45 - ¶¶ 1-4; Doc 37-1 - ¶¶ 4-7. There is also no dispute as to the applicable Deposit Account Agreement governing the Accounts. Doc 37-1 – Pg 233.

The trial court found that "Plaintiff has not established an essential element of his breach of contract claim–an actual breach by Discover of a contractual provision set forth in the governing Deposit Account Agreement." Doc 56 – Pg 23.

Regarding electronic funds transfers, the Deposit Account Agreement states: "We must hear from you no later than 60 days after we made the FIRST statement available on which the problem appeared." DE 37-1, Connolly Dec., Ex. A-5 (Deposit Account Agreement at 35). Regarding other types of transactions that are not electronic funds transfers, the Deposit Account Agreement states: "[i]f you do not call or write us regarding an item that you did not authorize or that contains an unauthorized alteration within 30 days after a statement is mailed or otherwise made available, we are not liable to you for subsequent unauthorized transactions on your

Account that we could have prevented if you had timely told us of the unauthorized alteration." *Id.* (Deposit Account Agreement at 30). Likewise, Plaintiff was contractually obligated to notify Discover "if you believe your Debit Card or PIN has been lost or stolen" or "if your statement shows transfers that you did not make" and to do so "within 60 days after the statement was made available to you." *Id.* (Deposit Account Agreement at 35).

Mr. Johnstone's testimony that he sent a letter on July 10, 2019, within the relevant time window, if believed, would obligate Discover to act. Failure to do so constitutes breach.

Attached to the Complaint is an incident report by the Okeechobee County Sheriff's Office, dated July 10, 2019. Doc 1-1 - Pg 15-22. According to this report, a deputy sheriff responded to Okeechobee County Jail on July 10, 2019, following Plaintiff's report of a suspicious incident. *Id.* at 20. The deputy met with Plaintiff who stated that he found a piece of paper with his credit card numbers on it *several days ago*, which Plaintiff flushed down the toilet. *Id.* Plaintiff indicated that he nonetheless suspected unauthorized activity on his credit cards potentially involving his cellmate and he "just wants to cancel his credit cards and a report to be generated." *Id.* (emphasis added).

Plaintiff was asked in his deposition "[h]ow did you report the fraud directly to Discover Bank on July 10th, 2019?" and Plaintiff responded " I … wrote a letter

to Discover Bank …. I wrote a letter to them …. I said, you know, my account is being—my account is being attacked, or whatever the wording I used, and please lock down my account. Please do not let anybody else withdraw money. I am currently incarcerated." Doc 37-2 - Pg 102, 137.

In his sworn interrogatory responses, Plaintiff similarly claims to have "reported the fraud or identity theft directly to Discover Bank on July 10, 2019." Doc 37-4 at 6.

Mr. Johnstone's testimony is consistent with his verified interrogatory responses (Doc 37-4 at 6), Discover bank statements (Doc 37-1 – Pg 33-231), and a contemporaneous police report (Doc 1-1 at 20). If the Court weighs the evidence in favor of the nonmoving party here, then it will conclude that the unauthorized transactions began in July 2019 and Plaintiff notified Discover on July 10, 2019, within the timeframe required by the deposit account agreement.

### *B. Discover Also Breached by Failing to Honor Mr. Johnstone's Closure Request*

The Agreement also provides:

> "You can close your Account at any time by notifying us in person, in writing or calling us." Doc. 37-1, Pg 250.

Mr. Johnstone was asked in his deposition "[h]ow did you report the fraud directly to Discover Bank on July 10th, 2019?" and Mr. Johnstone responded " I … wrote a letter to Discover Bank …. I wrote a letter to them …. I said, you know, my

account is being—my account is being attacked, or whatever the wording I used, and *please lock down my account*. Please do not let anybody else withdraw money. I am currently incarcerated." Doc 37-2, Pg 102, 137. (emphasis added).

This is reasonably construed as a closure or freeze request pursuant to the deposit account agreement. Discover did nothing and over $300,000 was depleted from Mr. Johnstone's accounts during the following months due to Discover's failure to close his accounts. A jury could find that Discover's failure to timely close the accounts was a breach.

## CONCLUSION

Mr. Johnstone presented sworn testimony, consistent interrogatory responses, and supporting documentation that he sent Discover a timely letter requesting account protection. A reasonable jury could infer that (1) a letter was sent by Mr. Johnstone to Discover, (2) the letter was sent on July 10, 2019, notifying Discover of fraudulent activity, (3) the letter requested Discover to close his accounts, (4) the fraudulent activity began around July of 2019, (5) Mr. Johnstone sent a letter notifying Discover within the required time frame outlined in the deposit account agreement, and (6) Discover breached the deposit account agreement by refusing to immediately close Mr. Johnstone's accounts.

The district court erred in granting Discover Summary Judgment by weighing credibility and overlooking disputed material facts.

This Court should REVERSE the summary judgment and REMAND for trial.

Respectfully submitted,

## CERTIFICATE OF COMPLIANCE WITH FONT REQUIREMENT

I HEREBY CERTIFY that this brief conforms to the requirements of FRAP 32(g) as it does not exceed thirty (30) pages.

***/s/ Jerome A. Stone, Jr.***
**Jerome A. Stone, Jr.**
Florida Bar No. 57010

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed and furnished via email to: David Elliott, Esq. and Sara L. Solano, Esq. of Burr & Forman LLP, 200 East Broward Blvd., Suite 1020, Fort Lauderdale, FL 33301, at delliott@burr.com; tsmyth@burr.com; ssolano@burr.com; and rzamora@burr.com, this 9th day of July, 2025.

***/s/ Jerome A. Stone, Jr.***
**Jerome A. Stone, Jr.**
Florida Bar No. 57010